UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **LORENZO FOREMAN, et al.,** : | |
| Plaintiffs : | |
| v. : | CIVIL NO. 3:01CV0061(WIG) |
| **STATE OF CONNECTICUT, et al.,** : | |
| Defendants. : | |

### SETTLEMENT AGREEMENT[1]

**I.    INTRODUCTION**

The parties, by counsel, enter into this Settlement Agreement ("the Agreement"), which they will submit to the Court for its approval. The Agreement: (a) contemplates certification of a class consisting of all males who, after their arrest for any qualifying non-violent, non-drug related misdemeanor offense, or any civil contempt, were required by the New Haven Community Correctional Center ("NHCCC") between January 12, 1998 and January 12, 2001 to remove their clothing for visual inspection of their buttocks or genitalia, when there existed no basis for a reasonable, individualized suspicion that they were carrying or concealing weapons or contraband; and (b) settles all claims of the class, including, without limitation on the generality of the foregoing, claims of class representatives and absent class members who have not opted out, for all money damages, attorneys' fees, costs, and interest, by establishing a common fund of $2.5 million, to be shared among participating class members after payment of attorneys' fees, costs, claims administration expenses, and payment to class representatives as provided

---

[1] This Settlement Agreement supercedes the terms set forth in the parties' Joint Stipulation of Settlement previously tendered to the Court.

in ¶ 36 below. Under this Agreement class members will receive one payment no matter how many times they were admitted into and/or searched while incarcerated at the NHCCC during the class period.

## II. TERMS

### A. Procedural History

1. Plaintiffs filed this action on January 12, 2001.

2. Plaintiff Charles Campbell alleged that he was subjected to a strip and visual body cavity search pursuant to policy at the NHCCC on December 13, 2000, after he was remanded by a judge at Superior Court pursuant to a family support mittimus. He claimed that he was not charged with the commission of any criminal offense and had no history of criminal behavior that would justify the strip and visual body cavity search to which he was subjected.

3. Plaintiffs Horace Dodd, Sr. and Lorenzo Foreman allege they were both subjected to strip and visual body cavity searches pursuant to a custom and practice at the NHCCC in 1998 and 1999 after they were ordered detained at the NHCCC for civil contempt for failure to pay child support obligations. Both claimed that they were not charged with the commission of any criminal offense and had no history of criminal behavior that would justify the strip and visual body cavity search to which they were subjected.

4. Defendants answered, denying all of Plaintiffs' material allegations. After discovery, the parties entered into settlement negotiations, supervised by Magistrate Judge William I. Garfinkel, which have produced this Agreement.

**B.    Class Definition and Certification**

5.    The Court, with the consent of the parties, shall certify a class composed of all males who, after their arrest for any qualifying non-violent, non-drug related misdemeanor offense[2], or any civil contempt, were required by the NHCCC between January 12, 1998 and January 12, 2001 to remove their clothing for visual inspection of their buttocks or genitalia, when there existed no basis for a reasonable, individualized suspicion that they were carrying or concealing weapons or contraband  (hereafter referred to collectively as "the Class").

6.    Notice of the certification of the class and settlement shall issue within 30 days following Legislative approval pursuant to Conn. Gen. Stat. §3-125a, as set forth in ¶ 48 below, both directly to the last known addresses of all potential class members and by publication, and in a form to be agreed upon by the parties, approved by the Court, and intended to maximize notice to the class and ease the filing of proofs of claim and administration of the settlement.

**C.    Settlement Fund**

7.    Defendants will provide a settlement fund of $2.5 million to settle all claims of Plaintiffs and the class, including claims for attorneys' fees and costs, costs of administering the settlement, and interest, if any, which claims shall be subject to any and all liens as set forth in ¶¶ 38 and 47 below.

8.    The parties agree and acknowledge that Defendants have denied liability in whole, and that the payment and other agreements contained herein were made and were given without admission of liability which is expressly denied, and which payment and other

---

[2] See list of Qualifying Offenses attached as Exhibit A and incorporated by reference in this Agreement.

3

agreements were made and given by Defendants solely for the purpose of buying their peace and freedom from litigation. No language contained in this Agreement or in any orders issued by the Court approving or denying either preliminary or final approval to this Agreement shall in any way be construed as acknowledgments or admissions of liability, all of which are expressly denied by Defendants.

9. Defendants and their counsel agree to provide reasonable assistance to Plaintiffs' counsel and to the Claims Administrator to facilitate the administration of this settlement including providing access to data, information and documents necessary to determine the last known address and contact information for all potential class members and qualification of claimants for payment from the settlement funds. Such data or information shall include, but not be limited to criminal history, institutional records and information regarding any and all liens. Plaintiffs' counsel shall file an appropriate motion and proposed order for disclosure of data and documents which may not otherwise be disclosed under the provisions of state or federal law. Any information provided pursuant to such disclosure order shall be used only in connection with this litigation, and shall be kept confidential and not disclosed to anyone other than Plaintiffs' counsel and the Claims Administrator except as set forth in this Agreement.

10. Plaintiffs and Defendants understand that this Agreement will require the approval of the Court.  The parties will jointly request that the Court approve the terms of this Agreement.

11. Should Plaintiffs have to incur any additional attorneys' fees or costs because of a default by Defendants in the timely performance of its obligations under this Agreement, Defendants may be responsible for payment of reasonable attorneys' fees and

costs at rates established under the Prison Litigation Reform Act (PLRA) to Plaintiffs under 42 U.S.C. §1988.  Any request for such additional fees and costs shall be by application to the Court with opportunity for objection by Defendants.  No such motion shall be allowed nor any additional fees or costs paid by the Defendants due to delays in the claims process for any reason, provided the Defendants have paid the $2.5 million settlement proceeds set forth in ¶ 7 above to the Claims Administrator to establish the settlement fund.  The payment of said amount shall fulfill and satisfy any and all financial obligations of the Defendants under this Agreement and no further fees or costs of any kind shall be paid by the Defendants.

      12.    Defendants shall maintain and control the settlement funds until such time as they are distributed to the Claims Administrator, who shall set up an interest bearing bank account or accounts at a bank within the State of Connecticut, as may be appropriate, for payment of the qualifying individual claims which may be allowed under this Agreement.  The Claims Administrator shall also post a bond and obtain appropriate insurance to guarantee the performance of the obligations required of the Claims Administrator under this Agreement and to pay for any claims of liability in connection with administration of the settlement fund.  Such funds shall be distributed to qualified claimants by the Claims Administrator within 30 days of entry of the Court's Order resolving any appeals of disqualified claimants and dismissing this case.

**III.**    **<u>COURT SUPERVISION</u>**

      13.    The Defendants shall be obligated to perform their obligations under this Agreement upon the Court's entry of an order approving this Agreement after a fairness hearing pursuant to Fed. R. Civ. P. 23 (e).  After entry of such order, this case shall remain

pending during administration of the settlement. The Court may enter orders as appropriate to enforce this Agreement, to adjudicate the rights and responsibilities of the parties, to resolve appeals from Defendants and/or disqualified claimants, and to effect fair and orderly administration, as necessary, of the settlement fund.  After distribution of all settlement proceeds and satisfaction and completion of all duties and responsibilities imposed by this Agreement, the Court shall enter an order of dismissal effecting the dismissal of all class claims against Defendants with prejudice, and incorporating the terms of this Agreement pursuant to *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994).

14*.*     Any deadlines, dates, or other details in this Agreement may be amended only by agreement of the parties and approved  by the Court on a showing of good cause.

### IV.     **FAIRNESS HEARING PURSUANT TO RULE 23 (e) FED. R. CIV. P.**

15.     The parties will jointly request that the Court hold a fairness hearing pursuant to Fed. R. Civ. P. 23 (e) as soon as reasonably practicable after Legislative approval pursuant to Conn. Gen. Stat. §3-125a, as set forth in ¶ 48 below*,* to decide whether to approve this Agreement as fair, reasonable, and adequate.  The fairness hearing shall be scheduled for a time not less than 30 days following publication of notice.  The deadline for filing claims shall be set for a date not less than 60 days following the fairness hearing and the Order approving this Agreement.

### V.     **CLAIMS ADMINISTRATOR**

16.     Class counsel recommends that Analytics, Inc.  be approved by the Court as Claims Administrator.  Analytics, Inc. has substantial experience in processing claims filed by claimants in class action settlements similar  in size and scope to the settlement in this action, and performing related administrative work and, if approved by the Court at the

6

preliminary approval hearing, shall be retained by Plaintiffs' counsel under a contract requiring a bond or surety to Defendants for the settlement funds, with all payments being paid from the settlement fund. Counsel for the parties and the parties themselves shall have no responsibility or liability for administering the settlement.

17. The Claims Administrator will administer notice to class members in the manner prescribed by the Court; shall accept and docket all claim forms; shall send copies of all objections to the settlement to counsel for the parties on a rolling basis as soon as practicable after they are received; shall send copies of all claims forms to counsel for the parties on a rolling basis as soon as practicable after they are received, who shall have an opportunity to object; shall sustain or overrule any objections of Defendants, subject to further appeal to the Court; shall send all notices that a claim has been either accepted or rejected to class members; shall resolve any appeals of claim denials, subject to further appeal to the Court; shall calculate the amount of each claim pursuant to the formula set out in this Agreement, and any deductions for liens, if any; shall distribute settlement funds to approved claimants; and shall report to the Court as necessary including providing a final report.

18. Counsel for the parties will oversee settlement administration and will provide direction to the Claims Administrator as needed. In the event of any dispute as to whether any of the parties has failed to comply with any of the terms of this Agreement, the parties shall contact the Court in an effort to resolve any such dispute prior to filing any motion seeking specific performance.

**VI.    NOTICE, OBJECTIONS. AND CLAIMS**

19. The Claims Administrator will send a Notice of Certification of Class Action

and Settlement and of the Fairness Hearing ("Notice of Settlement") and a Settlement Claim Form by first class mail postage prepaid to all potential class members at their last known addresses within 30 days following Legislative approval of this settlement, as provided in ¶ 48 below.  The Notice of Settlement and Settlement Claim Form shall be in a form jointly agreed to by the parties and submitted to and approved by the Court.  If any mail is returned by the post office with notice of a more current address, the Claims Administrator will resend the notice to that address.  The Claims Administrator is not required to make any further efforts to send mail directly to class members.  A Notice of Settlement and Settlement Claim Form will be made available to anyone who requests such information.  Claim forms will be available on request through the Claims Administrator including through a toll free number.

20. The Notice of Settlement will include a summary of the terms of the settlement and the class member's right to contest the settlement.

21. The Settlement Claim Form shall request the class member's contact information, affirmation that he meets the class definition and that all information on the claims form, including information about liens, is true and accurate, instructions for check delivery, and a Form W-9.  The claims form shall include an acknowledgement that the information set forth therein is true and correct to the best of the claimant's recollection, and is signed under penalty of perjury pursuant to 28 U.S.C. § 1746.

22. The Claims Administrator will also publish the Notice of Settlement ("Published Notice") in the Connecticut Post, Hartford Courant and the New Haven Register.  The Published Notice shall be in a form jointly agreed to by the parties and submitted to and approved by the Court.  Defendants agree to post the Published Notice in

the admission area of NHCCC as well as in one area frequented by inmates in each of the separate housing units at the NHCCC. The notices will be posted contemporaneous with the mailing of the Notice of Settlement and publication of the Published Notice, and will remain posted until the last day that the settlement claim forms can be filed. In addition, Defendants have agreed to make available, during the same time frame defined in the prior sentence, to inmates (or anyone else) who requests it, a copy of the Notice of Settlement, and the cost of those copies shall be paid out of the settlement fund and shall be considered part of the cost of administering the settlement and shall not serve to increase Defendants' costs or liabilities under this Agreement. In addition to the legal notices, class counsel will issue a press release informing the public of the settlement in a form that will be jointly agreed to by the parties and submitted to and approved by the Court.

23. The Claims Administrator will send a claim form to anyone who requests one before the time for filing claim forms has expired. The Claims Administrator will also maintain a toll-free number for claimants to call to request a claim form or with questions. This number will be operational for at least five months Legislative approval of this Agreement.

24. In order for a class member to claim a share of the settlement, he must submit a valid and complete Settlement Claim Form postmarked no later than 60 days following the date of entry of the Court Order approving this Agreement after the Fed. R. Civ. P. 23 (e) fairness hearing. This deadline is the "Claims Deadline." Defendants' counsel shall be provided copies of all claims forms as soon as practicable after receipt, and shall have 30 days to file objections to any individual claims with the Claims Administrator, with copies of any such objections to Plaintiffs' counsel. This 30 day period for objecting may be

extended for good cause shown. The Claims Administrator shall make a decision as to any objection within 30 days of receipt of the objection and after consultation with Plaintiffs' counsel. Any such decision may be appealed by Defendants to the Court.

25. In order for a class member to object to the proposed settlement, he must submit a written objection to the Claims Administrator, but such written objection must be postmarked at least one week prior to the fairness hearing, and received by the Claims Administrator prior to the fairness hearing, in order to be considered timely. The Claims Administrator shall provide copies of all objections to counsel for the parties as soon as practicable by mail and/or fax as may be necessary, so that all objections are provided to counsel for the parties prior to the fairness hearing. In addition, an objector may appear in person or through counsel at the fairness hearing when the objection will be considered by the Court. The objecting class member must also submit a Settlement Claim Form to the Claims Administrator if he wishes to be eligible to share in the settlement should it be approved despite his objection.

## VII. APPROVAL AND APPEALS

26. The Claims Administrator will review each claim form to determine whether the claimant is a qualifying class member by confirming: (a) that the Settlement Claim Form is timely and valid; (b) that the information on the form is consistent with available data previously provided by Defendants, and supplemented by Defendants in their objection, if any; and (c) that the form is completely filled out and signed.

27. The Claims Administrator may, with knowledge and written consent of Defendants, waive a technical defect in a claim form to achieve substantial justice.

28. If a claimant does not meet the class definition, the Claims Administrator will

send a Notice of Claim Denial to the claimant. Notices of Claim Denial shall be sent promptly but in no event later than 60 days following the Claims Deadline. The denial notice will indicate the reason or reasons for the denial. These would include, but not be limited to, not being at the NHCCC following an arrest solely for a qualifying offense within the class period.

29.     In order to object to the Claims Administrator's determination that he is not a class member, a claimant must file a written appeal to the Claims Administrator postmarked no later than 15 days after the date of the mailing of the Notice of Claim Denial. He must include reliable written documentation, which need not be an official State of Connecticut record, that shows that he is a class member, and he may also include a sworn written statement subject to the penalty of perjury. The Claims Administrator will consult with counsel for the parties and make a determination on each appeal no later than 30 days after the deadline for class members to file such appeals. The Claims Administrator will inform the class member in writing of its determination, and provide copies to all counsel within 30 days of such determination. Rulings by the Claims Administrator may be appealed directly to the Court within 15 days of the receipt of the notice from the Claims Administrator approving or denying the claim. There shall be no further right of appeal beyond review of the ruling of the Claims Administrator by the Court.

30.     The Claims Administrator will send a Notice of Claim Approval ("Notice of Claim Approval") to each approved claimant, absent objection, promptly but in no event later than 60 days after the Claims Deadline.

31.     A claimant who used a different name upon admission to NHCCC must present documentation establishing that he is the person referred to in Defendants'

11

records.

## VIII.   <u>EXPENSES, ATTORNEYS' FEES AND COSTS</u>

32.   All administrative costs, including the Claims Administrator's fees and expenses, will be paid from the settlement funds.

33.   Plaintiffs' litigation expenses will be paid from the settlement funds.

34.   Class counsel will ask the Court to approve an attorney's fee of 33⅓% of the settlement funds.

35.   Plaintiffs' litigation expenses and attorney's fee will be calculated and paid within 30 days of entry of the Order approving this Agreement following the fairness hearing.  Administrative costs will be calculated and paid within 30 days of entry of the Order of Dismissal by the Court.  In addition, any copy costs incurred by Defendants pursuant to the obligation described in ¶ 22 above will be itemized and submitted to the Claims Administrator and counsel for Plaintiffs prior to entry of the Order of Dismissal, and will also be paid within 30 days of entry of the Order of Dismissal.

## IX.   <u>DISTRIBUTION TO CLASS MEMBERS</u>

36.   Named class representatives Lorenzo Foreman, Horace Dodd and Charles Campbell, if their claims are approved, shall each be paid $20,000.00, minus any applicable liens, in full and final settlement of all their claims against Defendants as well as for their service as named class representatives, including but not limited to surrendering their anonymity, bringing suit, submitting to depositions, and participating in and authorizing the settlement of this class action as set forth herein, all in complete satisfaction and discharge of their duties as named class representatives.  Their checks shall issue within 30 days of entry of the Order approving this Agreement following the fairness hearing.

37. Class members will receive payment from the settlement funds that remain after deducting attorneys' fees, costs, expenses of administration and payments to class representatives.

38. The Claims Administrator will calculate the amount of money due each class member by providing one share for every class member with an approved claim. The Claims Administrator will divide the amount remaining in the settlement fund (after the payments made as provided above) by the number of shares to determine the amount each participating class member will receive. Defendants shall have a lien on any settlement funds to be paid to any individual claimant to the extent there exists any court-ordered back-due child support payment obligations that remain unsatisfied by such claimant, as well as any other lien which may be claimed by the State of Connecticut, which shall remain in full force and effect. Such liens shall be deducted by the Claims Administrator prior to the payment of any individual claim pursuant to the settlement of this case.

39. Class members will receive only one payment no matter how many times they were admitted into and/or searched while incarcerated at the NHCCC during the class period.

40. Payments shall not exceed $10,000.00 to any claimant except for the three named Plaintiffs as set forth in ¶ 36 above.

41. Each class member's check will be made payable only in his or her name or, upon the death of a class member, to the personal representative of the deceased class member's estate upon filing an affidavit in compliance with the Connecticut procedure for collection of personal property by affidavit of the rightful heir to the extent permissible under

Connecticut law, or the equivalent procedure under the applicable law of another state that governs the estate of the deceased class member.  The check will be mailed to the class member at their mailing address or it may be picked up.  Any change of address request must be made in writing and must be signed by the claimant.

42. If a participating class member is confined in a prison, hospital, or other institution and has provided the address of such institution for payment, the settlement check will be sent to an appropriate institutional address (for example, the address for deposit in the Inmate Trust Fund) unless the class member makes other acceptable arrangements in writing with the Claims Administrator.  If a claimant's check is returned and the Claims Administrator has no record of a forwarding address, the Claims Administrator, after consulting with counsel for the parties, shall have discretion to either take reasonable steps to locate such claimant or return such funds to the State.

## X. POST-DISTRIBUTION ADMINISTRATION

43. Any settlement funds remaining after all settlement checks have been distributed and all costs, expenses and attorneys' fees have been paid will be returned by the Claims Administrator to the State of Connecticut.

44. At the conclusion of the claims administration process, the Claims Administrator shall provide a full and complete report to the parties and the Court that will include: (a) a list of approved claimants and the amounts paid to each; (b) a list of individuals whose claims were rejected by the administrator and the reasons therefor; and (c) a detailed accounting of all expenses incurred by and fees of the Claims Administrator.

## XI. DECEASED CLASS MEMBERS

45. If a class member is deceased, a legally authorized representative may file a

Settlement Claim Form on behalf of the estate. However, the representative must provide to the Claims Administrator the documentation required by ¶ 24 above, as well as a certified copy of the Probate Court order appointing the person as the authorized representative of the deceased class member prior to the claims' deadline, or the claim will be denied.

### XII. RELEASE AND AGREEMENT TO DEFEND, INDEMNIFY AND HOLD HARMLESS.

46. In consideration of payment of the settlement amount, Defendants will be released from all liability for the class members' claims for all strip and body cavity searches that were part of this lawsuit including class members who do not file claims, except for any class members who requested exclusion and filed a claim within the statute of limitations. The parties have expressly agreed that the release of claims arising from the settlement includes all visual inspections, including without limitation visual body cavity inspections, that otherwise fall within the scope of the claims certified as a class action by the Court in this case. The parties also agree that all such claims against all of Defendants' employees and other agents are barred because the settlement expressly covers Defendants, its employees and agents. Class members will be afforded an opportunity for exclusion as provided for in Fed.R.Civ.P. 23(e)(3), and as specified in the Notice of Settlement which will be submitted to the Court for approval.

47. In further consideration of payment of the settlement amount, each class member shall be obligated to satisfy all liens, subrogation interest or claims of any doctor, hospital, insurance carrier, state or governmental agency, or any other person, firm or corporation, which have been made or may in the future be made against the payment to that class member described herein, or against the Defendants, arising out of the claims,

demands, actions, or causes of action set forth in Plaintiffs' Complaint and released as part of this Agreement. Each class member further agrees to hold harmless, and to defend and indemnify Defendants, including its officers, officials, employees, attorneys, and agents, and any of them, to the fullest extent possible, from and for any claims, demands, actions, causes of actions, suits, judgments, costs or expenses of any kind, brought by that class member as a result of any search within the scope of this Class Action as certified by the Court and any Orders approving this Agreement, whether or not the class member actually made a claim, except any class member who opted out of the settlement.

### XIII.　**LEGISLATIVE APPROVAL**

48. The parties acknowledge that the Defendants' authority to enter into this Agreement is contingent upon the General Assembly's approval of this Agreement pursuant to Conn. Gen. Stat. § 3-125a. Defendants have not obtained the General Assembly's approval at the time they and their attorneys signed this Agreement, and will not have the General Assembly's approval until such time as the General Assembly has approved this Agreement by resolution, or the thirty day period for the General Assembly to consider this Agreement has elapsed, as described in Conn. Gen. Stat. § 3-125a. This Agreement shall be submitted for Legislative approval following the Court's preliminary approval of this Agreement.

**For The Plaintiffs And The Plaintiff Class:**

Date: March 13, 2006                     _____/s/_____
                                        Gregory A. Belzley
                                        DINSMORE & SHOHL LLP
                                        1400 PNC PLAZA
                                        500 West Jefferson Street
                                        Louisville, KY  40202
                                        (502) 540-2300 Telephone


Date: March 16, 2006                     _____/s/_____
                                        Anthony A. Wallace
                                        WALLACE & O'NEILL, LLC
                                        500 Central Avenue
                                        New Haven, CT  06515
                                        (203) 389-9998


                                        **DEFENDANTS**
                                        State of Connecticut, et.al.

                                        RICHARD BLUMENTHAL
                                        ATTORNEY GENERAL


                                        _____/s/_____
                                        Theresa C. Lantz
                                        Commissioner of Correction


                                        _____/s/_____
                                        Brian K. Murphy
                                        Deputy Commissioner of Operations


Date:  March 15, 2006                    _____/s/_____
                                        Terrence M. O'Neill
                                        Fed. Bar No. ct10835
                                        terrence.oneill@po.state.ct.us


17

        _____/s/_____
Steven R. Strom
Fed Bar No. ct01211
steven.strom@po.state.ct.us
Assistant Attorneys General
110 Sherman Street
Hartford, CT  06105
Tel. : (860) 808-5450
Fax:  (860) 808-5591

**APPROVED AND SO ORDERED.**

Dated at Bridgeport, CT this _____ day of _____, 2006.


_____
William I. Garfinkel
United States Magistrate Judge